WILLIAM H. BLODGETT, TAX COMMISSIONER, *vs.* GUARANTY TRUST COMPANY OF NEW YORK, EXECUTOR, (ESTATE OF HARRIET D. SEWELL).

WILLIAM H. BLODGETT, TAX COMMISSIONER, *vs.* WINCHESTER BENNETT ET AL., EXECUTORS, (ESTATE OF THOMAS G. BENNETT).

HAMILTON GIBSON, ADMINISTRATOR, c. t. a., (ESTATE OF EMMA L. B. GIBSON) *vs.* WILLIAM H. BLODGETT, TAX COMMISSIONER.

WILLIAM H. BLODGETT, TAX COMMISSIONER, *vs.* MIDDLETOWN TRUST COMPANY, TRUSTEE, (ESTATE OF WILBUR F. STARR).

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

208

Argued October 7th, 1931—decided January 26th, 1932.

*Farwell Knapp,* Inheritance Tax Attorney, with whom, on the brief, was *Warren B. Burrows,* Attorney-General, for the Tax Commissioner.

*Charles M. Lyman,* with whom was *Clarence W. Bronson,* for Hamilton Gibson, administrator, *c. t. a.*

*James E. Wheeler,* for Winchester Bennett *et al.,* executors.

*Alvan Waldo Hyde,* for Middletown Trust Company, trustee.

*Alvan Waldo Hyde,* with whom, on the brief, was *R. L. Redfield* of New York City, for Guaranty Trust Company of New York, executor.

HINMAN, J. Harriet D. Sewell died May 20th, 1930, domiciled in Greenwich. On December 28th, 1926, she executed an irrevocable deed of trust to a New York Trust Company of certain securities therein described in which deed it was provided that the trustee collect the income and pay it to Mrs. Sewell during her life; upon her death the income was to be paid to her husband during his life, and upon his death the trustee was directed to pay and transfer the principal of the trust absolutely to their daughter, if she survive, but if not, then to the issue of the daughter, with a gift over in default of such issue.

Thomas G. Bennett died August 19th, 1930, domiciled in New Haven. On June 18th, 1921, he executed and delivered a warranty deed conveying to his three children four pieces of land with the dwelling-house and other buildings thereon located in New Haven, reserving to himself "the use, improvements, occupation, enjoyment and income from said premises for and during the full term of [his] natural life." The real estate so conveyed had long been and thereafter remained the grantor's home and he continued to live there until his death.

Emma L. B. Gibson died April 9th, 1930, always having been domiciled in Washington, Connecticut. On May 4th, 1918, she gave a deed of certain real estate in Washington to a trustee reserving to herself the net income thereof for her life with remainder at her death to her son in fee or, if he should not survive, to her grandchildren in fee. On April 5th, 1918, Mrs. Gibson executed in New York an irrevocable trust deed covering certain intangible personal property consist-

ing of stocks, bonds, and a check drawn by her to the order of the trustee. By the terms of the deed, the net income was required to be paid to the settlor during her life and at her death the principal to her son or, in case he did not survive, to the settlor's grandchildren. The trustee was at all times domiciled in New York, and the certificates of stock and the bonds were located in that State.

Wilbur F. Starr died July 23d, 1929, domiciled in East Hampton. On May 31st, 1928, he and his wife (who survived him) transferred by one trust deed certain real estate in East Hampton and certain securities, each contributing equal shares, to a trustee. It was provided that the income be paid to or for the benefit of either of the donors during their joint lives, upon the death of one to the survivor for his or her life, the donors to have the use and occupancy of any real estate forming a part of the trust, and provision was made for the distribution of the fund upon the death of both to certain other persons and corporations. The tax commissioner claimed that the one half of the fund contributed by the decedent was taxable.

The four cases involve, and the reservations present, the same general questions and were argued together in this court.

The first question reserved in each case is: Did the property which was the subject of transfer "pass by deed, grant, or gift . . . intended to take effect in possession or enjoyment at the death of the grantor or donor" within the meaning of the Connecticut succession tax statute, in force at the date of the deed, or within the meaning of any subsequent amendment or revision of said succession tax statute?

The common and perhaps not unnatural aversion of property owners to the burdens of taxation appears to have applied with special force to the diminution of

the estates left by them at death through the imposition of estate, inheritance, or succession taxes. The early statutes taxing property passing by will or inheritance were followed by resort to various means for avoiding subjection to the tax. Among the devices most simple and commonly resorted to were gifts in contemplation of death, and transfers, in trust or otherwise, whereby the transferor reserved to himself the life use or income for life. These artifices were met by provisions in the taxing statutes calculated to close such avenues of tax avoidance. In consequence, the inheritance tax statutes of most of the States imposing taxes of that character include among the taxable transfers those made in contemplation of death and those intended to take effect in possession or .enjoyment at or after the transferor's death. The Federal estate tax, on the transfer of a decedent's net estate, includes in the gross estate property to the extent of any interest therein of which the decedent has, during his lifetime, made a transfer or created a trust intended to take effect in possession or enjoyment at or after the death of the transferor or settlor.

The original Connecticut Act, Chapter 180, Public Acts 1889, § 1, included provision for a tax on "property within the jurisdiction of this State, and any interest therein, . . . which shall pass . . . by deed, grant, sale, or gift made or intended to take effect in possession or enjoyment after the death of the grantor, to any person in trust or otherwise." In 1897 (Public Acts, Chap. 201) this provision does not appear, but it was restored in substance, by § 3 of Chapter 332, Public Acts of 1915, and has since continued unchanged in any respect materially affecting the present inquiry. General Statutes (1918) §§ 1261-1271; Public Acts 1929, Chap. 299, §§ 1 and 2; General Statutes (1930) Chap. 77, §§ 1360, 1361.

These provisions of State and Federal statutes have occasioned an immense amount of litigation, although Connecticut has been conspicuously free therefrom. The most cursory review of the cases on this subject is impracticable here. The general subject is exhaustively covered in an article by Professor Rottschaefer of the University of Minnesota, in the Minnesota Law Review, April and May, 1930. See also Gleason and Otis, Inheritance Taxation (4th Ed.) p. 380 *et seq.* The more recent cases are collected in A. L. R. annotations, Vol. 49, p. 864 *et seq.*, and Vol. 67, p. 1247 *et seq.* It is sufficient for present purposes to state that for a long period the power of the States constitutionally to enact such provisions, at least of prospective application, has not been regarded as open to question. None of the transfers involved in the cases now under consideration involve retrospective operation of the law, questions of construction as to whether the gift took effect, in possession or enjoyment, in the ultimate beneficiaries or in persons other than the transferor, before his death, or other complications which have furnished occasion for a large part of the litigation. Transfers such as here involved, except in the Bennett case, that is, to trustees to pay the income to the transferor during life with directions that upon his death the corpus shall be paid to designated beneficiaries, though the trust be irrevocable, have been held by practically all courts, Federal and State, to fall within the meaning of a transfer intended to take effect in possession or enjoyment at or after the death of the transferor, and therefore subject to tax under statutes covering transfers of the class last mentioned. 49 A. L. R. p. 878, 67 A. L. R. p. 1250.

This court has not had occasion to pass directly upon the question, freed from the element of retrospective operation, but our full concurrence with the

general view just stated is clearly indicated in *Blodgett v. Union & New Haven Trust Co.*, 97 Conn. 405, 410, 116 Atl. 908. We there pointed out that the "qualifying and enlarging phrase," "in possession or enjoyment," included in our original succession tax Act (1889), dropped from the law in 1897, and reinserted in 1915, "marks the difference between a tax on the privilege of succeeding to the property of a decedent, and a tax on the privilege of succeeding to the possession and enjoyment of property which the decedent has conveyed away during his lifetime reserving only a right to the income during his own life."

The raising of the question we are now considering appears to be due to the construction placed, by the representatives of the several estates involved, upon certain recent decisions of the Supreme Court of the United States, as evincing a departure in effect from the decisions above referred to and lending encouragement to a renewed attack upon the provision under consideration and its applicability to the facts of cases such as those now before us. In *Reinecke* v. *Northern Trust Co.* (1929) 278 U. S. 339, 49 Sup. Ct. 123, there were involved five trusts in which the settlor did not reserve any life use to himself, but the income was made payable to another, and each trust was to terminate five years after the settlor's death or on the death of the respective life tenants, whichever should first occur, with remainders over to others. The settlor retained no interest either as to principal or income, only reserving a right to revoke each trust with the consent of the life tenant. It was held that since the power to revoke was dependent on the consent of the one entitled to the beneficial, and consequently adverse, interest, the trusts had passed as completely from any control by the settlor which might benefit him as if the gifts had been absolute.

*May* v. *Heiner* (1930) 281 U. S. 238, 50 Sup. Ct. 286, concerned an irrevocable trust providing that the income be paid to settlor's husband during his life; at his death, if settlor survived him, the income to be paid to her during her lifetime; and on her death, or on her husband's death if he survived her, the trust to cease and the principal be paid to the settlor's children. The record fails clearly to disclose whether Mrs. May, the settlor, survived her husband, but this is stated by the opinion to be "not of special importance." It was held that "at the death of Mrs. May no interest in the property held under the trust deed passed from her to the living; title thereto had been definitely fixed by the trust deed. The interest therein which she possessed immediately prior to her death was obliterated by that event." The conclusion that the property embraced in the trust was not subject to the Federal estate tax appears to be based on the *Reinecke* case, from which the opinion quotes: "In the light of the general purpose of the statute and the language of § 401 explicitly imposing the tax on net estates of decedents, we think it at least doubtful whether the trusts or interests in a trust intended to be reached by the phrase in § 402 (c) 'to take effect in possession or enjoyment at or after his death,' include any others than those passing from the possession, enjoyment or control of the donor at his death and so taxable as transfers at death under § 401. That doubt must be resolved in favor of the taxpayer. . . ."

It is stated in *Milliken* v. *United States* (1931) 283 U. S. 15, 19, 20, 51 Sup. Ct. 324, 326, that in the *Reinecke* case and *May* v. *Heiner* "the only relevant question was one of construction, whether [the gifts] were of the class intended by Congress to be taxable under § 402 (c) as transfers 'intended to take effect in possession or enjoyment at or after death.' "

*Commissioner* v. *Northern Trust Co.,* and *Morsman* v. *Commissioner,* 283 U. S. 782, 783, 51 Sup. Ct. 342, 343, 75 L. Ed. 1412, involved irrevocable trusts wherein the settlor reserved a life use with remainders over. In *McCormick* v. *Commissioner,* 283 U. S. 784, 51 Sup. Ct. 343, 75 L. Ed. 1413, the trust instrument provided that the income should be accumulated and added to principal except that if in any year the settlor's net income should be less than a specified amount she could take from the trust income enough to make up the deficiency, and that the trustee should pay out of net income any amount to charities which she might designate. Remainders over after her death were created in the settlor's three children and there was a further provision that if the settlor survived her children (which did not occur) the entire trust property should revert to her. These three cases were argued on the same day, February 27th, 1931, and decided March 2d, 1931, by Per Curiam opinions stating in each case that "there being no question of the constitutional authority of the Congress to impose prospectively a tax with respect to transfers or trusts of the sort here involved," "the question . . . is that of construction of § 402 (c) of the Revenue Act of 1921 . . . a provision similar to that of § 402 (c) of the Revenue Act of 1918, . . . which has already been construed by this court." And it was held "upon the authority of *May* v. *Heiner*" that the property transferred under the deed of trust was not subject to the Federal estate tax as a transfer intended to take effect in possession or enjoyment at or after the decedent's death. Investigation of the records and briefs in these cases confirms the impression given by the opinions that, as in *May* v. *Heiner,* the only question considered and decided was one of construction. No question was made as to

constitutional authority to impose, prospectively, a tax upon such transfers or trusts.

It is interesting and significant that on the day following that on which these three cases were decided, Congress adopted an amendment expressly including within transfers made in contemplation of or intended to take effect in possession or enjoyment at or after death, "a transfer under which the transferor has retained for his life or any period not ending before his death (1) the possession or enjoyment of, or the income from, the property or (2) the right to designate the persons who shall possess or enjoy the property or the income therefrom." It is obvious from the quotation from the opinion in the *Reinecke* case which we have given above, that the decision, upon which the succeeding cases relied, was motivated by the nature of the Federal estate tax, which is upon the transfer of, rather than the succession to, property of the decedent. *Knowlton* v. *Moore*, 178 U. S. 41, 20 Sup. Ct. 747; *Y. M. C. A. of Columbus* v. *Davis* (1924) 264 U. S. 47, 44 Sup. Ct. 291; *Edwards* v. *Slocum* (1924) 264 U. S. 61, 62, 44 Sup. Ct. 293. "The tax is on the act of the testator not on the receipt of property by the legatees." *Ithaca Trust Co.* v. *United States* (1929) 279 U. S. 151, 155, 49 Sup. Ct. 291; *Corbin* v. *Townshend*, 92 Conn. 501, 505, 103 Atl. 607; Gleason & Otis, Inheritance Taxation (4th Ed.) p. 2 *et seq.* On the other hand, with a few exceptions, the State inheritance tax statutes levy a duty or excise upon the beneficiary for the privilege or right of succession to property. *Silberman* v. *Blodgett*, 105 Conn. 192, 205, 134 Atl. 778; Gleason & Otis, Inheritance Taxation (4th Ed.) p. 4. The Connecticut tax is of this nature. *Blodgett* v. *New Britain Trust Co.*, 108 Conn. 715, 720, 145 Atl. 56; *Bankers Trust Co.* v. *Blodgett*, 96 Conn. 361, 365, 114 Atl. 104. The Fed-

eral cases above mentioned which are relied upon in support of the claim that the transfers here in question are not taxable, since they "deal with the construction of Federal statutes imposing estate taxes . . . are distinguishable because of the terms of those statutes, if not on other grounds." *Worcester County National Bank* v. *Commissioner of Corporations and Taxation* (Mass., 1931), 175 N. E. 726, 729. We have been able to discover no relevant subsequent case which has given these decisions an effect adverse to the taxability of such gifts under State succession tax statutes. See *In re Barber's Estate* (April 13th, 1931) 304 Pa. St. 235, 155 Atl. 565; *City Bank Farmers Trust Co.* v. *McCutcheon* (April 24th, 1931) (N. J.), 151 Atl. 78, 154 Atl. 626; *In re Best's Estate* (April 30th, 1931) 249 N. Y. Supp. 784; *Matter of Barstow* (May 22d, 1931) 256 N. Y. 647, 177 N. E. 177. Therefore, we feel that we are not constrained to place a similar construction upon our own statute and are still at liberty to adhere to the views as to its meaning and scope which usually have been held as to State statutes of similar nature and terms and which we indicated in *Blodgett* v. *Union & New Haven Trust Co., supra;* these lead to the conclusion that the property which was the subject of transfer was within the meaning of the statute, and taxable accordingly. "The transaction was within the description of the statute. The property passed from the decedent to the beneficiary 'by deed, grant or gift.' Though upon the creation of the trust an equitable remainder in the trust fund, after the life estate of the decedent in such fund, vested in interest in the beneficiary, she was not entitled to 'possession or enjoyment' of the fund or any part of it until the death of the decedent. . . . Her present right to the future 'possession or enjoyment' of the trust fund, which was 'vested' in the sense of

being assignable and transmissible by her during the life of the decedent . . . was not 'possession or enjoyment,' within the meaning of the statute. The statute recognizes the familiar distinction between taking effect in possession or enjoyment and vesting in right, title or interest. . . . Apparently the legislature intended to reach for the purpose of taxation the shifting of the enjoyment of property—the 'economic benefits' thereof or 'economic interest' therein (compare *Saltonstall* v. *Saltonstall,* 276 U. S. 260, 271, 48 Sup. Ct. 255, 72 L. Ed. 565; *Reinecke* v. *Northern Trust Co.,* 278 U. S. 339, 346, 49 Sup. Ct. 123, 73 L. Ed. 410, 66 A. L. R. 397)—from a former owner at his death, even though such shifting of enjoyment followed necessarily from a prior transfer of title *inter vivos.* As was said in *State Street Trust Co.* v. *Treasurer & Receiver General,* 209 Mass. 373, 379, 95 N. E. 851, 852, 'The policy of the law is, that the owner of property shall not defeat or evade the tax by any form of conveyance or transfer, where after death the income, profit or enjoyment enures to the benefit of those who are not exempted.' " *Worcester County National Bank* v. *Commissioner of Corporations and Taxation, supra.*

As to the conveyance in the Bennett case, "though the grantee . . . becomes the owner upon delivery of the deed in such sense that his title may be the subject of levy and seizure, and . . . only time is wanting to make a title which includes the right to possession and enjoyment, the legislature may subject him who takes such a conveyance to a collateral inheritance tax. It is well settled that reservation of a life estate is such a postponement of possession and enjoyment as that the tax attaches, under such a statute as we have. . . . *Reish* v. *Commonwealth,* 106 Pa. St.

521." *Brown* v. *Gulliford*, 181 Iowa, 897, 899, 165 N. W. 182.

The next question, common to all of the cases, is, does the imposition of such a tax offend against Amendment XIV or any other provision of the Constitution of the United States? A negative answer is so decisively indicated that, beyond what has already been said, extended discussion is unnecessary. The constitutionality of taxation of transfers at death was long since upheld (*Knowlton* v. *Moore*, 178 U. S. 41, 20 Sup. Ct. 747) and has been consistently maintained. The power of a State to tax transfers to take effect in possession or enjoyment at or after death was recognized in *Nickel* v. *Cole*, 256 U. S. 222, 41 Sup. Ct. 467. The same considerations apply to transfers of this kind as to gifts in contemplation of death. Of the latter it has recently been said: "It is sufficient for present purposes, that such gifts are motivated by the same considerations as lead to testamentary dispositions of property, and made as substitutes for such dispositions without awaiting death, when transfers by will or inheritance become effective. Underlying the present [United States] statute is the policy of taxing such gifts equally with testamentary dispositions, for which they may be substituted, and the prevention of the evasion of estate taxes by gifts made before, but in contemplation of, death. It is thus an enactment in aid of, and an integral part of, the legislative scheme of taxation of transfers at death." "We hold, as this court has several times intimated, that the inclusion of this type of gifts in a single class with decedents' estates to secure equality of taxation, and prevent evasion of estate taxes, is a permissible classification of an appropriate subject of taxation." (Citing numerous cases). *Milliken* v. *United States* (1931) 283 U. S. 15, 20, 23, 51 Sup. Ct. 324.

Analogous also, for present purposes, is the inclusion in the Federal system of death taxes, of estates by the entirety. "As was pointed out in *Tyler* v. *United States* [281 U. S. 497, 50 Sup. Ct. 356], pp. 503, 505, such estates are appropriate subjects of death taxes . . . they resemble gifts made in contemplation of death, likewise taxed by the estate tax provisions of the 1916 and later revenue acts. [Citing *Milliken* v. *United States, supra*]." *Phillips* v. *Dime Trust & Safe Deposit Co.* (1931) 284 U. S. 160, 166, 52 Sup. Ct. 46, 47. As hereinbefore noted, the decisions in *May* v. *Heiner*, and the *Morsman, Northern Trust Co.,* and *McCormick* cases, *supra,* did not concern or affect the constitutional question.

It was stated in *Blodgett* v. *Union & New Haven Trust Co.,* 97 Conn. 405, 410, 116 Atl. 908, that "nobody doubts the right of the State to tax the privilege of succeeding to the possession and enjoyment of property under what the United States Supreme Court has called 'artificial and technical estates with limitations over.'" Citing *Keeney* v. *New York,* 222 U. S. 525, 32 Sup. Ct. 531. We conclude that there is no constitutional obstacle to the tax.

The further contention is advanced on behalf of the Gibson estate that although such transfers, in general, be held to be taxable, the personalty trust in that case is not so subject to taxation by Connecticut, because Mrs. Gibson, although domiciled in Connecticut, while temporarily in New York executed there the contract placing in trust with a New York trustee the intangible personal property—stocks, bonds, and a check on a New York bank—the physical evidences of which were also in the latter State. As to the basic principle involved, the situation appears to be indistinguishable from that applicable in cases, such as *Silberman* v. *Blodgett,* 105 Conn. 192, 134 Atl. 778, 277 U. S. 1,

48 Sup. Ct. 410, in which it has been held that intangible personalty, although physically outside the State of the domicil of the owner, has such a situs at the domicil that its transfer on the death of the owner may be subjected to inheritance tax under the laws of the State of domicil. *First National Bank of Boston* v. *Maine* (1932) 284 U. S. 312, 52 Sup. Ct. 27; *Bankers Trust Co.* v. *Greims,* 110 Conn. 36, 147 Atl. 290; *Blodgett* v. *New Britain Trust Co.,* 108 Conn. 715, 720, 145 Atl. 56; *Hopkins' Appeal,* 77 Conn. 644, 60 Atl. 657; *Gallup's Appeal,* 76 Conn. 617, 57 Atl. 699. The succession tax is "prescribed in view of the death of a domiciled resident of this State whose land within this State and whose personal property, wherever situate, is governed as to its disposition, distribution and succession, by the laws of this State." *Hopkins' Appeal, supra,* p. 649. This consideration extends to transfers of the nature here involved. "There is no natural right to create artificial and technical estates with limitations over, nor has the remainderman any more right to succeed to the possession of property under such deeds than legatees and devisees under a will. The privilege of acquiring property by such an instrument is as much dependent upon the law as that of acquiring property by inheritance." *Keeney* v. *New York, supra,* p. 533.

*Bullen* v. *Wisconsin* (1916) 240 U. S. 625, 36 Sup. Ct. 473, upheld subjection, by Wisconsin, to an inheritance tax on the fund under a trust the circumstances of creation (in Illinois) and the nature of which appear to be in all essential respects analogous to the Gibson trust. State court cases to a similar effect include *Lines' Estate,* 155 Pa. St. 378, 26 Atl. 728; *Countess de Noailles' Estate,* 236 Pa. St. 213, 84 Atl. 665; *In re Fulham's Estate,* 96 Vt. 308, 119 Atl. 433; *Douglas County* v. *Kountze,* 84 Neb. 506, 121 N. W.

593. *MacClurkan* v. *Bugbee*, 106 N. J. L. 192, 150 Atl. 443, appears to be distinguishable in both factual and statutory situation, including that the statute imposes the tax only when the transfer is "made by a resident," and the transferor at the time of the execution of the trust deed was a resident of Illinois and only subsequently became domiciled in New Jersey; also, the trust deed contained no provision for the disposition of the corpus after the termination of life estates created by it, so that the remainder formed part of the decedent's estate at her death and as such was subject to the New Jersey inheritance tax.

The representative of the Gibson estate relies largely upon the fact that the trust contract was made in New York with a New York trustee, claiming that as the contract is governed by and dependent for enforcement upon the laws of that State, it is beyond the scope of control of disposition, distribution, and succession by the laws of Connecticut. However, as we view it, such resort as might possibly be required to the New York laws for effectuation and performance of the contract would concern, only, "the accidental situation of some personal property which may require the aid of the laws of that State for its reduction to possession," or in some other respects, resembling in nature administration ancillary to that of the domicil. *Hopkins' Appeal, supra,* p. 653. Therefore, we hold this personalty trust to be subject to the Connecticut tax.

As we rule the transfers to be taxable, we are required to consider the further reserved questions—as of what date should the property be valued for the purposes of computing the tax, and is computation to be made upon the whole value of the property transferred, or upon the then present value of the life estate, or upon the then present value of the remain-

ders? Our statute does not contain, as do some, express provision affording an answer, and there appears to be a singular scarcity of reported cases involving analogous situations from which assistance may be derived. It was held in *Blodgett* v. *Union & New Haven Trust Co., supra,* p. 409, that the liability to taxation of a transfer effected by an irrevocable grant of a remainder interest depends upon the terms of the statute in effect at the time when the transfer takes place. Superficially, there is some plausibility in a contention that the value of the transfer, for the purpose of the tax, should be ascertained as of the same date, in which case the logical measure would be the deduction of the value of the reserved life estate from that of the corpus of the fund or other property which was the subject of the transfer. There are, however, considerations supporting valuation as of the date of possession and enjoyment which we regard as prevailing and determinative. The true value to the beneficiary does not lie in the present right to the future possession or enjoyment of the trust fund or property—which is all that is vested—but in the consequences of his accession to actual possession and enjoyment and the resulting economic benefits. Therefore, it appears that the tax should be assessed upon the actual value which comes into the possession of the remainderman. *In re Meserole's Estate,* 162 N. Y. Supp. 414, 416; *State* v. *Pabst,* 139 Wis. 561, 585, 121 N. W. 351; *Reish* v. *Commonwealth, supra,* p. 527; 14 Minnesota Law Review, p. 616.

There is no inequity inherent in a postponement of the valuation, as well as assessment and payment of the tax, until the death of the grantor or settlor and accrual of possession in the remainderman; the latter would benefit thereby in instances in which values decreased between the transfer and the death, and it is

not unfair that he be taxed upon any increase which occurred. *Keeney* v. *New York, supra,* p. 537. The tax commissioner also suggests, with reason, that a tax on the present value of the remainder at date of transfer logically could be made payable immediately, and that in such case the interest on the tax to date of death would substantially equal the amount deducted as the value of the life estate. There is also the practical consideration that usually such transfers do not and cannot come to the attention of the taxing authorities until after the death of the transferor, and the difficulties incident to appraisal, then, of values as of a time long past are obvious. See § 245a, Public Acts of 1931. On the whole, we conclude that the statute may and should be construed as contemplating that the basis upon which the tax is to be computed is the value of the property at the time when the remainderman becomes entitled to it in possession and enjoyment—the date of death of the transferor. *Worcester County National Bank* v. *Commissioner of Corporations and Taxation, supra,* 175 N. E. 729; *In re Fulham's Estate,* 96 Vt. 308, 119 Atl. 433, 437.

We answer the questions propounded as follows: (1) to the first question in the Sewell, Bennett and Starr cases and the first and third questions in the Gibson case,—that the property which was subject of transfer in each instance (in the Starr case one-half of the fund) passed by deed, grant, or gift intended to take effect in possession or enjoyment at the death of the grantor or donor within the meaning of the Connecticut succession tax statute in force at the execution of the instrument of transfer; (2) to the second question in the Sewell, Bennett and Starr cases and the second and fourth questions in the Gibson case,— that the imposition of such tax thereon transgresses no provision of the United States Constitution; (3)

to the third question in the Sewell, Bennett and Starr cases and the fifth question in the Gibson case,—that the property should be valued as of the date of the death of the decedent; and (4) to the fourth question in the Sewell, Bennett and Starr cases and the sixth question in the Gibson case,—that the tax should be computed on the valuation made as stated in the answer last preceding.

In this opinion the other judges concurred.